May it please the Court, my name is Jacob Foster on behalf of the petitioner Walter Guillermo Perez-Rojo. I would like to reserve two minutes for rebuttal. Immigration agents entered Mr. Perez's home without a warrant, consent, or exigent circumstances. The government does not dispute that the agency below erred by failing to suppress the evidence that was introduced against Mr. Perez. Their brief abandons their reliance below on an administrative warrant for a third party, which they now evidently acknowledge is insufficient to support intrusion into the home. The government solely requests that this Court remand without deciding the narrow issue of constitutional law that is squarely before it. But this Court's case law confirms that where the government has had the opportunity to present evidence regarding a legal issue, and the agency has already ruled on that legal issue, remand is inappropriate. Well, if I read the government's brief correctly, and it's — I don't think it's entirely clear, so I'll have to ask counsel to decide, but as I read it, one argument I thought they were making is that the I.J. didn't find there was a prima facie case made, so it, the government, didn't really have a chance to present evidence as to authority to enter the home. And what is your answer to that? Your Honor, I think this Court need not reach whether as a general matter the Court needs to remand if the government does not present evidence based on a matter of barcenas, because in this Court, the government clearly sought to justify its conduct, and it's waived its right to further proceedings. First, the government's brief before the immigration judge sought to justify its conduct based on reliance on an administrative warrant for the third party. Their brief at AR-76 initially focused on the prima facie issue, but then the government turned its attention to arguing that the government agents were justified in their conduct because, quote, they had a rational, articulable basis for their actions. Second, the government submitted evidence at the hearing. They submitted the I-213 form, which was attached to their brief, and they also entered this as an exhibit into evidence. That's at AR-79. Third, at the hearing, the government cross-examined Mr. Perez in support of their justification regarding Mr. Perez's resemblance to, quote, this individual who the government was looking for. That's at AR-56. Fourth, the Board's decision clearly relied on the government's justification and the evidence that they submitted. The Board concluded that, quote, there is no dispute that the officers were at an address where another illegal alien was believed to have been present, say, as recorded on a record of deportable alien, Form I-213, Exhibit 4. End quote. That's at AR-2. The Board also clearly attempted to justify the agents' conduct by concluding that they did not act egregiously because, first, the agents were apparently permitted to enter in the Board's conclusion, and, second, Mr. Perez was not arrested during this encounter. Fifth, the government, in its own 2006 brief before this Court, never indicated that the record needed to be expanded in any way. The government argued that, quote, the evidence of record supports the Board's conclusion that no such egregious violation occurred. That was at page 14 of their initial brief. So the record is clear here that we don't have an instance where the government lacked the opportunity to submit evidence in the first instance. Rather, they put forward relatively weak evidence, and now they merely want a second bite at the apple on the map. Kennedy. And where do you say they abandoned the argument, that argument? Below they relied on the administrative warrant for the third party, and now, in this Court, if I understand their position, Your Honor, they are merely seeking a remand and not requesting that the Court affirm. And I believe that is a wise tactical decision, given the fact that it's undisputed that the administrative warrant does not support intrusion into the home. The immigration agents are specifically trained not to use these warrants to go into the home. They are not issued by a magistrate. They're issued by one of any number of 25 employees at ICE. This is a bag-and-baggage order. It's a bag-and-baggage order for another alien, not for Mr. Perez. And they used this bag-and-baggage order to enter Mr. Perez's house, to search the entire house. They thought it was the house of this other alien, right? So they knock on the door, and your client opens the door. He is more or less the same age as the other alien and arguably looks similar, which they might infer might be a relative, right? I mean, it could. I mean, you know, brothers, cousins sometimes, you know, have facial similarities, right? Your Honor, we can speculate to that, but there's no evidence in the record. The immigration judge here found that the agent, as soon as the door was opened, entered into the home. Does a bag-and-baggage order authorize him to enter the home of the alien who is the subject of the bag-and-baggage order? I mean, it was not, but let's say it were. Sure. Would the bag-and-baggage order authorize him to enter it? No, Your Honor. And even an arrest warrant wouldn't authorize that. The Supreme Court's decision in Staggold is clear that an arrest warrant cannot support intrusion into the home. And the Supreme Court's decision in Payton is also clear that unless there's a reason to believe that the subject of the arrest warrant is inside the house, that an arrest warrant would not support crossing the doorway into the home. So I think that situation is, of course, not what we have here, where it's a third party and there's no evidence in the record that they mistook Mr. Perez for Mr. Reyes. Can I ask a question? You're treating this as a standard Fourth Amendment case, but the test here is an egregious violation. If he had the what you call bag-and-baggage order, why is that egregious? Under this circuit's controlling case law, Your Honor, an egregious violation is any conduct where a reasonable officer should have known that they were violating the Constitution and given immigration agents extensive training that these warrants do not support intrusion into the home. Well, can you tell me why it's a violation of the Constitution? I understand it's Ninth Circuit law, but I'd like to know what's egregious about it. Because the Supreme Court seems to have drawn a distinction between this and standard Fourth Amendment law. Yes, Your Honor. This Court's decision in Orohage, Adamson, and most recently Lopez-Rodriguez all confirm that it's an egregious action to enter a home without consent or exigent circumstances because the unequivocal nature of the Supreme Court and this Court's And the agents should be aware of that. You have a little less than two minutes left. Do you want to save it for rebuttal? I will. Thank you, Your Honor. Okay. Thank you. And we'll hear from the government. May it please this Court, my name is Andrew Oliveira. I'm here on behalf of the Respondent, Eric H. Holder, the Attorney General. Mr. Oliveira, if you went back to the immigration court, what would you do? Well, we actually would remand it to the board. Okay. If you went back, what would you do? Well, again, it would go to the board and they would have to determine, based on Lopez-Rodriguez, whether or not the immigration judge erred in failing to terminate or failing to grant the alien's motion to terminate. Yes. Okay. What would you do? That is, what would the government do? What evidence would it put on? What arguments would it make? And, of course, the next question is that it couldn't have done before. I cannot speak to what ICE would do. Our office does not handle any proceedings before. Well, if you can't make any suggestion as to what the government would do when it goes back, why in the world should we send it back? Well, we believe that it should be sent back. This Court can, in an order, direct the board to consider cases. Yeah. But, look, here's the point. I can fully understand if our law had changed in Lopez-Rodriguez, that the government could say, look, we didn't – we were blindsided. We didn't know that by the time we made it to argument in San Francisco that the law would be different. But the law isn't different. It's been the same whether it's good law or bad law. The law has been the same since, I think, it's 1994. So certainly the government knew what it was up against. So that's not an excuse, I mean, to go back. And what's the point of remanding anyway? The Board of Immigration Appeal is not an expert on Fourth Amendment law. They – this is not a remand. I mean, even aside from Judge Reimer's point, which I think is quite telling, let's say this were new law. It's not new immigration law. I'm sorry, it's not new to begin with. But assuming it were new, it's not immigration law. It is Fourth Amendment law, and the Board of Immigration Appeals can't really – doesn't really have any expertise in that area. There's nothing they can – we could say, well, you know, it's sort of new law in the area of expertise, so we want to hear what the experts have to say about it. They're not the experts on Fourth Amendment law. We are. So what's the point of sending it back anyway, even if it were new? Well, they can consider the facts of the case and apply this court to them. Well, we can consider them. So why don't you tell us what we should consider? I mean, well, what – you know, persuade us. Well, we believe that the case should be sent back to the board for reevaluation in light of Lopez-Rodriguez. All right. Imagine you're now back before the board and make a mental leap, and you are one of those lawyers that appears before the board. What would you say to them? Say it to us. Let's not have sort of a dry run. Again, I cannot – You must understand, you can't ask for a remand in theory. To ask for a remand, you have to be able to tell us, here is what would happen before the agency, and this is why the agency should be allowed to make the decision in the first instance, and sort of give us a dry run of what that would look like. And if that thing looks like something where the agency has expertise or where, as Judge Limer says, where the government was blindsided by a change in the law, we'll say, well, okay, fine. We'll send it back and let them have a first shot at it. But I have no idea what you would do other than stand there and say, gee, do it again. I understand your concern, Your Honor, and I'm not trying to – It's really a question, not a concern. You're going to lose if you don't come up with something. I can just predict. I can just sort of feel it. So I'm just giving you a chance to persuade us. Well, Your Honor, I cannot speak for what ICE will do. All I can say is that we believe that there is no further – Anything further? No, Your Honor. What you might consider doing is taking back to the powers that be the idea of conceding error fully. There's just no point in basically conceding it was wrong and asking for remand that wouldn't be any different. Well, without – I would have saved everybody all of this. Well, without specifically conceding, I don't have the authority to do so. Well, I understand. But somebody back there does. I think what you should do is – and I'm not blaming you in any way. But I think you should – there will be a transcript of this, another transcript, an audio recording of this on our website within hours, certainly by today at this time. And I think you should take the whole argument and present it to your supervisor and ask the question, what could we have done to save the government the expense of my ticket, your ticket to San Francisco, and us the trouble of having to hear this case? It was a great time to be here. I mean, the Giants won the whole bit, so. I do appreciate that. Yeah. I mean, your concern is not I win. But, you know, again, we're here to serve the public and to make sure justice is done. And I'm not blaming anybody. We're not blaming anybody. But I think the question – we had a meeting with Assistant Attorney General West yesterday to discuss immigration cases. And this is one of the issues we raised, how can we better serve the public at less expense. So this is a good case in point. You might want to take it up with your supervisor and say, you know, what could we do? Could we have done in this case? It would have been, you know, save the court and counsel and the government expense and trouble. Okay? Thank you. Thank you. I gather there's no rebuttal. Okay. Thank you. You don't want to grasp the feet from the joints. Thank you. Thank you. Case is signed. You will stand a minute.
judges: Trager, Kozinski, Rymer